UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| WORLD WIDE PACKAGING, LLC, | |
| Plaintiff, | |
| v. | Court No. 21-00189 |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**COMPLAINT**

Plaintiff World Wide Packaging, LLC ("Plaintiff" or "WWP US"), by and through the undersigned attorneys, alleges against Defendant United States, acting through U.S. Customs & Border Protection ("CBP"), as follows:

**JURISDICTION**

1. Plaintiff brings this action pursuant to 19 U.S.C. § 1515 to contest CBP's denial of Protest 2704-19-106358, in which CBP improperly determined that WWP US must appraise its imported merchandise in Entry Number 113-8461002-5 based on the price WWP US charged in a domestic sale to its downstream U.S. customers.

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a), which confers "exclusive jurisdiction" to the Court over "any civil action commenced to contest the denial of a protest." 28 U.S.C. § 1581(a).

**PARTIES**

3. Plaintiff WWP US creates affordable, sustainable, and unique packaging products for the cosmetic and personal care industries. WWP US's products include thousands of different packaging items such as shampoo and conditioner tubes and bottles, makeup compacts, and

lipstick bullets. WWP US is headquartered in Florham Park, New Jersey, and has sales offices located in New York, California, and Texas.

4. Defendant United States received the duties, taxes, and fees paid on Entry Number 113-8461002-5.

5. CBP is the agency that made the contested decision regarding appraisal and collected the duties, taxes, and fees paid on Entry Number 113-8461002-5.

**STANDING**

6. WWP US is the importer of record for certain plastic tubes and caps entered under Entry Number 113-8461002-5.

7. On November 22, 2019, WWP US submitted Protest Number 2704-19-106358 to protest CBP's determination to appraise the imported plastic tubes and caps based on the price WWP US charged in a domestic sale to its downstream U.S. customers.

8. CBP denied WWP US's protest (Protest Number 2704-19-106358) on October 29, 2020.

9. WWP US has paid all liquidated duties, taxes, and fees associated with the importation of the subject plastic tubes and caps prior to the commencement of this action.

**TIMELINESS OF THE ACTION**

10. On November 22, 2019, WWP US timely protested CBP's determination that the plastic tubes and caps should be appraised based on the price charged in domestic sales to WWP US's downstream U.S. customers.

11. CBP denied WWP US's protest (Protest Number 2704-19-106358) on October 29, 2020.

12. To challenge CBP's denial of a protest, the importer must commence an action in

this Court "within one hundred and eighty days after the date of mailing of notice of denial of a protest." 28 U.S.C. § 2636(a),

13. WWP US timely filed the summons in this action on April 23, 2021.

## **LEGAL BACKGROUND**

14. Section 402 of the Tariff Act of 1930, as amended by the Trade Agreements Act of 1979 ("Section 402"), sets forth the proper method of appraising merchandise imported into the United States. 19 U.S.C. § 1401a.

15. Under Section 402, the preferred method of appraisement is transaction value. 19 U.S.C. § 1401a(1)(A). Transaction value is defined as the "price actually paid or payable for merchandise when sold for exportation to the United States," plus certain statutorily enumerated additions. *Id.* § 1401a(b)(1).

16. If an importer's merchandise cannot be appraised under transaction value, Section 402 requires that the importer appraise the merchandise based on the remaining methods enumerated in that Section, applied in sequential order. 19 U.S.C. § 1401a(a)(1)(B)-(F). The alternative methods of appraisement are: the transaction value of identical or similar merchandise; deductive value; computed value; and the "fallback" method. *Id.*

17. For an importer to base appraisement on transaction value, the subject transaction must be the subject of a *bona fide* sale between the buyer and seller and it must be a sale for exportation to the United States. *See* T.D. 96-87, Vol. 30/31, No. 52/1 Cust. B. & Dec. (Jan. 2, 1997).

18. A "sale" is generally defined as a transfer of title from one party to another for a price or consideration. *See J.L. Wood v. United States*, 505 F.2d 1400, 1406 (C.C.P.A. 1974) (defining a "sale" as a "transfer{} of property from one party to another for consideration"

3

(footnote omitted)); *J.H. Cottman & Co. v. United States*, 20 C.C.P.A. 344, 356 (1932) (defining a "sale" as "a transmutation of property from one man to another in consideration of some price or recompense in value" (citation omitted)).

19. For purposes of appraisement under Section 402, the sale for exportation must take place or be "consummated" prior to the exportation of the merchandise. *See Orbisphere Corp. v. United States,* 726 F. Supp. 1344, 1358 (Ct. Int'l. Trade 1989).

20. There are several factors that indicate that a sale is a domestic sale consummated within the United States and not a sale for exportation:

   a. that U.S. customers interact only with the U.S. importer of record and its U.S.-based employees, and not employees in overseas offices;

   b. that the U.S. importer and its office issues invoices, purchase orders, and other communications to the U.S. customers and receives payment from the U.S. customer;

   c. that the U.S. importer holds title to and assumes risk of loss during international shipment of the merchandise; and

   d. that title and risk of loss then passes to the U.S. customer at a U.S. location.

*See id.* at 1357.

## FACTUAL BACKGROUND

### I. WWP US's Transactions with WWP Suzhou and its Downstream U.S. Customers

21. WWP US employees in the United States design and market all of its packaging options to its U.S. customers. These employees work closely with U.S. customers to select packaging options that work best with the respective product and further the customer's brand recognition.

4

22. In July 2013, WWP US established World Wide Packaging (Suzhou) Co., Ltd. ("WWP Suzhou") as a wholly-owned subsidiary in China. WWP Suzhou manufactures plastic packaging tubes and caps for WWP US's customers.

23. Although WWP Suzhou markets and sells plastic tubes and caps to Chinese customers, its only U.S. customer is WWP US. WWP Suzhou does not market to or interact with customers in the United States.

24. When a customer in the United States places an order with WWP US, WWP US determines which of its suppliers is best suited to manufacture the packaging product contained in the order. WWP US makes this determination based on the manufacturer's capabilities and pricing options.

25. If WWP US decides to purchase the plastic tubes and caps from WWP Suzhou, it sends a purchase order to WWP Suzhou. This purchase order is based on delivery term EXWORKS, meaning WWP US is responsible for retrieving the merchandise from WWP Suzhou's factory and assumes risk of loss and holds title once retrieved.

26. Once it receives a purchase order from WWP US, WWP Suzhou manufactures the plastic tube and caps and then issues an invoice to WWP US for the finished products.

27. WWP US then arranges for transportation of the merchandise from WWP Suzhou's factory to WWP US's Los Angeles or New Jersey warehouses and pays WWP Suzhou for the plastic tubes and caps. WWP US holds the merchandise at the Los Angeles or New Jersey warehouses until the customer retrieves it.

28. Once the U.S. customer retrieves the plastic tubes and caps, it remits payment to WWP US.

29. The U.S. customer's order is always subject to FOB WWP US Los Angeles/New Jersey Warehouse, meaning WWP US assumes risk of loss and holds title to the merchandise until the U.S. customer claims the order at one of the two warehouses. WWP US's U.S. customers do not specify the country or facility that their orders will be sourced from when they issue a purchase order to WWP US, and WWP US is free to source the merchandise from WWP Suzhou or another supplier.

30. WWP Suzhou never interacts with a U.S. customer during this sales process; all invoices are issued by WWP US and customers remit payment only to WWP US.

## II. Protest Number 2704-19-106358

31. On June 12, 2019, CBP issued a Final Notice of Action in connection with Entry Number 113-8461002-5. In that Notice of Action, CBP rejected WWP US's use of transaction value to appraise the plastic tubes and caps WWP US purchased from WWP Suzhou, and appraised the plastic tubes and caps based on WWP US's domestic sale to its downstream U.S. customers as a sale for exportation.

32. On November 22, 2019, WWP US filed Protest Number 2704-19-106358 to contest CBP's conclusion that the post-importation domestic sales price between WWP US and its downstream U.S. customers was the proper basis for transaction value.

33. On July 8, 2020, after several conversations with CBP officials, WWP US submitted a supplement to the November 22, 2019 Protest to address why CBP could not rely on the domestic sale price between WWP US and its downstream U.S. customers. In that submission, WWP US explained why its transactions with its downstream U.S. customers were domestic sales that could not legally form the basis of transaction value. Specifically, WWP US explained that it – and not WWP Suzhou – was responsible for all interactions with U.S. customers, including

managing purchase orders, issuing invoices, receiving payment, and handling all customer-related issues. WWP US also explained how WWP US held title to and insured the plastic tubes and caps upon their shipment from WWP Suzhou until the U.S. customer retrieved the goods from WWP US's Los Angeles or New Jersey warehouses.

34. In the same submission, WWP US also argued that, if CBP declined to confirm the *bona fide* nature of the sale for exportation between WWP Suzhou and WWP US for purposes of appraising Entry Number Entry Number 113-8461002-5 based on transaction value, CBP should appraise the plastic tubes and caps using deductive value, consistent with the sequential hierarchy in 19 U.S.C. § 1401a(a)(1).

35. On October 29, 2020, CBP denied Protest Number 2704-19-106358, finding that it would appraise the plastic tubes and caps based on the domestic sales between WWP US and its downstream U.S. customers. In CBP's view, the price included in these domestic sales met the statutory definition of "transaction value" in 19 U.S.C. § 1401a(b)(1) – i.e., "the price actually paid or payable for the merchandise *when sold for exportation to the United States*."

36. To support its conclusion, CBP relied on some, but not all, of the Terms and Conditions included in WWP US's price quotations to its downstream U.S. customers, as well as a link to a video embedded in the signature line of an email sent by a WWP US sales representative to a downstream U.S. customer.

37. CBP's decision did not discuss how WWP US sources products from many different suppliers, or address certain statements in WWP US's Terms and Conditions that inform customers that WWP US is free to source its products from any supplier.

38. Compounding its errors, CBP likewise did not discuss how the downstream U.S. customers interact only with WWP US employees and never with WWP Suzhou employees, that

7

downstream U.S. customers remit payment only to WWP US, and that WWP US holds title to (and assumes risk of loss of) the merchandise between shipment from WWP Suzhou's facility and retrieval by the customer at WWP US's Los Angeles or New Jersey warehouses.

## **STATEMENT OF CLAIMS**

### **COUNT ONE: CBP UNLAWFULLY APPRAISED WWP US'S IMPORTS OF PLASTIC TUBES AND CAPS**

39. Plaintiff realleges and incorporates by reference the allegations contained above in Paragraphs 1-38.

40. Pursuant to Section 402, CBP "shall" appraise merchandise under transaction value when it is (1) the subject of a *bona fide* sale between a buyer and seller and (2) a sale for exportation to the United States. 19 U.S.C. § 1401a(a)(1)(A), (b)(1).

41. Sales consummated after importation into the United States are not sales for exportation and therefore cannot serves as the basis of transaction value. *See Orbisphere*, 726 F. Supp. at 1358.

42. In determining that WWP US's sales to its downstream U.S. customers could serve as the basis of transaction value, CBP ignored evidence demonstrating that these domestic sales were consummated after importation into the United States and, thus, were not sales for exportation and could not, as a matter of law, serve as the basis of transaction value. CBP ignored evidence demonstrating that WWP US's downstream U.S. customers do not remit payment for the plastic tubes and caps until after the goods are imported. CBP likewise ignored evidence demonstrating that only WWP US issues invoices to those downstream U.S. customers, receives payment from such customers after delivery, handles all other interactions with these customers, and holds title to and risk of loss of the plastic tubes and caps between shipment from WWP Suzhou's warehouse and retrieval by the customer.

43. Therefore, for the reasons provided in Paragraphs 1-38, CBP erred as a matter of law when it appraised WWP US's imports based on the post-importation sale to its downstream U.S. customers.

44. Instead, CBP should appraise WWP US's imports of plastic tubes and caps based on the transaction value of its purchases from WWP Suzhou, in accordance with 19 U.S.C. § 1401a(a)(1)(A), (b)(1).

45. In the alternative, CBP should move sequentially through 19 U.S.C. § 1401a(a)(1), as required by law, and appraise WWP US's imports of plastic tubes and caps based on one of the alternative valuation methods.

## **PRAYER FOR RELIEF**

Plaintiff respectfully requests that this Court enter judgement in its favor and:

(1) order CBP to appraise WWP US's imported merchandise in Entry Number 113-8461002-5 based on the price charged by WWP Suzhou under 19 U.S.C. § 1401a(a)(1)(A), (b);

(2) in the alternative, order CBP to appraise WWP US's imported merchandise in Entry Number 113-8461002-5 based on the price charged by WWP Suzhou in a manner consistent with 19 U.S.C. § 1401a(a)(1)(B), (C), (D), (E) or (F);

(3) declare that CBP unlawfully appraised WWP US's merchandise imported in Entry Number 113-8461002-5 based on the price charged to WWP US's downstream U.S. customer under transaction value;

(4) direct the appropriate CBP port to reliquidate the subject merchandise accordingly and to refund the excess duties collected, with interest;

(5) award Plaintiff costs and reasonable attorney fees; and

(6) grant such other and further relief as may be just and proper.

Respectfully submitted,

 /s/ Lars-Erik A. Hjelm
Lars-Erik A. Hjelm
Suzanne Kane
Devin S. Sikes
Colette L. McCrone

Dated: June 28, 2021

AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, NW
Washington, D.C. 20006

*Counsel to Plaintiff*

**CERTIFICATE OF SERVICE**

  Pursuant to U.S. Court of International Trade Rule 4(h), I hereby certify that on June 28, 2021, copies of Plaintiff's Complaint were served upon the following counsel for Defendant by the ECF system and by certified mail, return receipt requested at the following addresses:

Peter Adam Mancuso
U.S. Department of Justice
International Trade Field Office
26 Federal Plaza
Room 346
New York, NY 10278

CBP Assistant Chief Counsel
U.S. Department of Homeland Security
International Trade Litigation
U.S. Customs and Border Protection
26 Federal Plaza - Room 258
New York, NY 10278

                 /s/ Lars-Erik A. Hjelm